## Hopkins *against* Stockton.

In a case of doubtful solution, involving a question of conflict between a statute of the state and of the United States, this court will so decide as that the judgment may come in review before the highest judicial tribunal, the Supreme Court of the United States, without the expression of their own opinion, which might conclude the party.

A toll-gate keeper upon that part of the National Road which passes through Pennsylvania, would not be justified by the Act of the 13th June 1836, in stopping a coach carrying the United States Mail, for the refusal to pay toll: if toll be recoverable, it can only be by action.

If tolls be recoverable from a contractor for carrying the United States Mail upon that part of the National Road which passes through Pennsylvania, by reason of the Act of 13th June 1836, it can only be by action, and in the name of the commissioner appointed in pursuance of the provisions of that Act.

ERROR to the Common Pleas of *Fayette* county.

William Hopkins, commissioner and superintendent of the Cumberland Road in Pennsylvania, against William B. Stokes and Lucius W. Stockton, surviving partners with Richard C. Stockton, deceased, contractors for carrying the United States Mail on said road.

This was an action on the case, in which the plaintiff thus declared:

" L. W. Stockton, one of the surviving partners and carriers of the mail line of stages running on the Cumberland road in Pennsylvania, was summoned to answer William Hopkins, commissioner of said road, being duly appointed and commissioned as such. Process having issued against William B. Stokes and the said L. W. Stockton, surviving partners with Richard C. Stockton, deceased, owners of the said mail line of stages, but not having been served on the said William B. Stokes, for that whereas the said L. W. Stockton and William B. Stokes, surviving partners as aforesaid, to wit: on the 31st day of February, A. D. 1841, were indebted to the said commissioner in the sum of $6000, lawful money of Pennsylvania, for divers tolls due at the several toll-gates on the said road, for running a long time, to wit, from the 13th day of June 1836, a coach with four horses on said road, within the state of Pennsylvania, and through the several toll-gates erected thereon; the said coach carrying the mail of the United States with passengers therein, which said tolls were made due and payable in virtue of an Act of Assembly, passed the 13th day of June 1836, entitled " an Act relating to tolls on that part of the Cumberland road which passes through Pennsylvania, and for other

purposes." In the first section of said Act, are the following words: "in all cases of wagons, carriages, stages or other modes of conveyance, carrying the United States Mail, with passengers or goods, such wagon, stage, or other mode of conveyance, shall pay half toll, upon such mode of conveyance;" and being so indebted, the said defendants, in consideration thereof, afterwards, to wit, on the day and year last aforesaid, undertook and then and there faithfully promised the said commissioner to pay him the said last mentioned sum of money, when they the said defendants should be thereunto required. Although the same to him the said commissioner to pay or any part thereof, although often required, the said defendants have altogether refused, and still do refuse, to the damage of the said commissioner $6200, and therefore he brings suit."

The defendant pleaded *non assumpsit.*

It was admitted upon the trial, that the defendant never made any express promise to pay, but that his coach, carrying the United States Mail, travelled upon the road, and that he refused to pay toll. Three questions arose:

1. Are tolls recoverable from a contractor carrying the United States Mail? And this involved the question whether the Act of Assembly of Pennsylvania of the 13th June 1836 is a violation of the compact between that state and the United States.

2. If tolls are payable, can the payment be enforced by action, or otherwise than by the gate-keeper at the gate?

3. If an action be maintainable, can it be in the name of the commissioner, appointed by the state of Pennsylvania?

The court below thus charged the jury:—

EWING, President.—The Act of 1831 prescribes the mode in which the payment of the toll is to be enforced, and that is, by stopping the person or vehicle attempting to pass without payment. I do not consider that the Act of 1836 authorizes any different remedy; and it is well settled, that when a new power or right is given by the Statute, and the Statute provides the mode by which the power is to be executed or the right enforced, those who claim the power or right, can execute the power or enforce the right in no other way. We think, therefore, upon this ground, the plaintiff cannot recover. The other points we think it unnecessary to decide, the decision being unnecessary to dispose of the case.

At the request of the counsel, we also decide another point. Taking the last proviso in the second section of the Act of April 4th 1831, in connection with the Act of Virginia of 7th July 1832, and the Acts of Congress of 3d July 1832 and 24th June 1834, which embrace and adopt them both, we are constrained to believe that the words "property of the United States," in the Act of Pennsylvania, were intended to embrace the mails of the United States. They are expressly exempted by the Act of Virginia.

[Hopkins v. Stockton.]

We cannot suppose that different terms were intended to be made with different states.   If the mails, then, were embraced, the last proviso in the 10th section of the Act of 4th April 1831, which, upon being accepted by Congress, forms a contract, prevents the state of Pennsylvania from ever adopting "any change, alteration, or amendment, that will in any wise defeat or affect the true intent or meaning of that Act."   The Act of the 13th June 1836, requiring carriages carrying the United States Mail to pay half toll, certainly materially affects the true intent and meaning of the Act of 1831, if the above be the true construction of that Act.

*Flenniken* and *M'Candless*, for plaintiff in error, referred to the Act of Assembly of 4th April 1831, *Pam. Laws* 419; Act of Congress of 3d June 1832; Act of Assembly of 1st April 1835, *Pam. Laws* 101; Act of Assembly of 13th June 1836, *Pam. Laws* 534; Act of Assembly of 28th March 1840, *Pam. Laws* 207.   There are many reasons why a corporation such as a turnpike company should be limited to the single remedy of collecting tolls through the medium of a toll-gate; but there can be no presumption that the state designed to limit her own officer to that single remedy. Nor can it be supposed that the state would be justified in arresting the United States Mail, and detaining it for the payment of tolls; which would be in violation of a positive Act of Congress. If, then, the Statute gives the right to receive toll, without a remedy for its collection, the common law will remedy the defect, and furnish a form of action to enforce the right.   5 *Mass.* 514; 10 *Johns.* 389.   Remedies are often concurrent: as if the Statute provided a penalty for an injury done to a turnpike-gate, it would thereby take away the common law action of trespass; and although the right of distress exists, the party may resort to the action of debt.   15 *Johns.* 220; 6 *Price* 131; 15 *Wend.* 267; 2 *Burr.* 803; 1 *Lord Raym.* 682; 1 *Blackf.* 261; 4 *Halst.* 387; *Addison* 314.

The action is rightly brought in the name of the commissioner; the Act of Assembly authorizes him to receive and disburse the money.   No part of it goes into the state treasury, and the state is, therefore, not interested in the fund claimed, further than that it shall be received by her officer, and disbursed by him in the repairs of the road.   An action would not therefore lie in the name of the commonwealth.

The principal point in the cause was not argued by the plaintiff in error, in consequence of an intimation from the court that it was their purpose to reverse the judgment on that point, so that the cause might be put in a shape for revision by the Supreme Court of the United States.

*Howell* and *Loomis*, for defendant in error.   By the Act of

[Hopkins v. Stockton.]

Assembly of 4th April 1831, tolls were not payable until the gates and toll-houses should be erected, and these are prescribed by the Act as the remedy by which the payment is to be enforced; and by the Act of 21st March 1806, where a specific remedy is given, none other shall be pursued. *Stroud's Purd.* 51; 9 *Watts* 63; 6 *Mass.* 44; 16 *Mass.* 70; 5 *Mass.* 515. If, then, the plaintiff treats the defendant as a common carrier upon the road, and deriving no immunity from the fact of his having in charge the mails of the United States, why should he be permitted to adopt a remedy which would be denied to any other individual or corporation under like circumstances. It is argued, that the remedy given by the Act could not be resorted to, because the coach carried the property of the United States. If this argument be sound, it cuts the plaintiff's cause of action by the root. He cannot strip the defendant of the character which his contract with the United States gives him, for the purpose of sustaining his claim against him, and then treat him as having that character, for the purpose of enforcing that claim by a peculiar remedy at law. It is expressly settled in Pennsylvania, that where there is authority to erect gates upon a turnpike for the purpose of enforcing the payment of toll, no other remedy can be resorted to. 2 *Penn. Rep.* 461.

Why should this action be maintained by the commissioner? He is but an officer of the commonwealth, appointed by authority of law, and without any personal interest in the fund. The state treasurer could not maintain an action otherwise than in the name of the commonwealth, to recover a sum of money directed by an Act of Assembly to be paid to him as such: it does not follow, therefore, because the money was payable to the commissioner, and he is directed to disburse it, that he can maintain an action in his name for its recovery.

The opinion of the Court was delivered by

SERGEANT, J.—A question has been raised in the present case, whether the Act of Assembly of this state, passed on the 13th of June 1836, requiring wagons, &c., carrying the United States mail, with passengers or goods, on the Cumberland road, to pay half toll, was not a violation of the compact previously made between the United States and this state, by virtue of the Act of Assembly passed on the 4th of April 1831, and the Act of Congress of the 3d of June 1832. The court below held that it was, and decided on that account, in addition to another ground taken, that the plaintiff could not recover. If we should now affirm the judgment of the court below, there would be no power to remove the cause to the Supreme Court of the United States for decision—a power which we think ought to be provided, considering that the question is how far a law of this state is in conflict with the Constitution of the United States, or an Act of Congress, and that it is one of considerable importance to the government of the

[Hopkins v. Stockton.]

United States and to the states of Pennsylvania, Maryland, and Virginia. For this reason, we deem it our duty to reverse this judgment, without expressing an opinion on the point, further than to direct a *venire facias de novo*, in order that the cause may be put in such a shape as that a writ of error may be taken from our future judgment to the Supreme Court of the United States. This can only be done by the court below charging the jury, on another trial, in favour of the plaintiff, and this court affirming that judgment.

Independently of this point, the defendant contends that this action can not be maintained, because another remedy is given by the Acts of Assembly, which ought to have been pursued; and the suit cannot be brought in the name of the plaintiff, and there was no assumpsit to pay.

Had there been another remedy for the tolls, provided by the Acts of Assembly, the case of *The Turnpike Company* v. *Brown*, (2 *P. R.* 462), might perhaps have ruled the present case. The question, however, does not arise under the Act of 1831, but under the Act of 1836; and this latter Act provides no remedy, in express terms, for the collection of these tolls. It is argued as if the remedy provided by the Act of 1831 were necessarily incorporated into the Act of 1836: but we are by no means satisfied that it is. No toll was levied on the mail-wagons by the Act of 1831: it was by the Act of 1836 these were first levied. Is it reasonable to infer, although the legislature have not said so, that they intended, when they passed the Act of 1836, that these tolls on the mail-stages should be enforced by stopping the mail-stages at the toll-gates, in case the right of the state to levy this toll should be contested? We think not: and the reason which operates upon us is, that knowingly and wilfully to obstruct the passage of the mail, is an offence made penal by Act of Congress. The State of Pennsylvania, in levying a disputable toll, would hardly authorize a proceeding which might bring its toll-gatherers within the penalty of an Act of Congress, when there was no necessity for so doing, as the tolls could be recovered by suit, and when, if the Act of Assembly were unconstitutional, it would furnish no defence to the toll-gatherers for obstructing the mails under it. It was the wisest and most prudent course for the legislature to take, to impose the toll, and let it be collected by an action at law, in which the rights of all could be examined in a civil proceeding, without prejudice, and without inconvenience to those who had no interest in the matter. We, therefore, think the remedy to collect the tolls by stopping the wagons containing the mails, is not to be considered as introduced into the Act of 1836, and that the action lies on the settled principle, that where a sum of money is directed by statute to be paid, and no remedy is provided, action lies at common law to recover it.

It is further said that the suit does not lie, because it is brought

in the name of the commissioner, and he is not authorized to sue. It is not pretended that it could be brought in the name of the toll-gatherers, as they are confined to the receipt of toll at the gates.   The person to sue must naturally and properly be the officer or commissioner who is at the head of this public trust and whose duty it is to receive the tolls and apply them to the uses for which they are received.   It cannot be the commonwealth that is to sue; for the money is not to go into the state treasury: it is to be employed only for certain specific purposes, connected with the duty of the commissioner.   By the Act of 1831, the commissioners (who are now reduced to one) were to build toll-houses and erect gates, and appoint the toll-gatherers.   By section 2 they were authorized to commute the tolls by taking an annual sum in lieu thereof.   By section 3 the toll-gatherers were to settle with the commissioners, and pay over to them, on demand, the amount of tolls collected, and the commissioners were to account in the Court of Quarter Sessions.   By section 4 the amount of tolls, after deducting expenses and charges, was to be applied, under the direction of the commissioners, to the repairs and preservation of the road.   By section 9 suits for penalties may be in the names of the commissioners, without naming them as individuals; and by section 2 of the Act of 13th of June 1836, the commissioners may sue for the penalties there imposed.

It thus appears that the commissioner is the commonwealth's directing, as well as fiscal agent, in relation to this road, with large powers and authorities for its care and management, and with the trust of disbursing the tolls receivable.   He stands, as it were, in lieu of a corporation—one sole manager, doing what, in ordinary corporations, is done by a board of managers.   The precedent cited, *Pigott* v. *Thomson*, (3 *Bos. & Pull.* 147), illustrates this point.   The corporation in that case was head — the treasurer subordinate: the treasurer, therefore, could not sue without express authority from the statute.   Not so here.   The office of commissioner concentrates in itself all the usual powers of managers and treasurer, and, therefore, he may, on principles of analogy and convenience, maintain the suit.   The mere circumstance of trustees being the persons to whom money is directed to be paid, has, in some instances, been held sufficient to enable them to sue for it.   See *Comfort* v. *Leland*, (3 *Whart.* 84), where the cases are collected and compared by Mr Justice Kennedy.

It is alleged there was no assumpsit to pay, but on the contrary the defendant positively refused to pay.   Acts speak louder than words.   He who uses the road and passes the gates, (with no view to evade or defraud) assumes to pay the legal tolls, though he might declare a thousand times he would not pay them.   The defendant's declarations amount only to a claim of his right to go free, so that he might not be bound beyond his legal liability.   So

[Hopkins v. Stockton.]

far he has the benefit of them; but farther than that the argument is without foundation.

Judgment reversed, and *venire facias de novo* awarded.